**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**IESHA N. SPRADLEY**,

      Plaintiff,

v.                                 Case No. 8:25-cv-03435-WFJ-AAS

**UMA EDUCATION, INC.**,

      Defendant.

_____/

## **ORDER**

Before the Court is Defendant UMA EDUCATION, INC.'s ("UMA") Motion to Dismiss. Dkt. 24. Plaintiff Iesha N. Spradley, has responded in opposition. Dkt. 27. After careful consideration, the Court grants Defendant's motion to dismiss.

## **BACKGROUND**[1]

This action arises out Plaintiff's termination by Defendant UMA. *See* Dkt. 22. Plaintiff began her employment with Defendant UMA as a Learner Services advisor on May 18, 2020. *Id.* ¶ 8. On May 22, 2024, Plaintiff was placed on medical leave by her primary care physician due to certain medical conditions, including major depressive disorder, anxiety disorder, post-traumatic stress disorder, and adjustment disorder. *Id.* ¶ 10. Defendant UMA permitted Plaintiff to take Family and Medical Leave Act ("FMLA") leave from May 22, 2024, through August 14, 2024. *Id.*

---

[1] At this stage, all facts alleged by Plaintiff are taken as true, and the Court recounts the allegations contained in Plaintiff's operative fourth Complaint. *See* Dkt. 22.

Following this, Defendant UMA then permitted Plaintiff to take Americans with Disabilities Act ("ADA") leave from August 15, 2024, through November 3, 2024. *Id.* ¶ 11.

On October 28, 2024, Plaintiff requested that her ADA leave be extended through December 16, 2024. *Id.* ¶ 12. On October 29, 2024, Defendant UMA denied Plaintiff's request, citing "undue hardship," and did not allow for an appeal of this decision. *Id.* ¶ 13. Defendant UMA set Plaintiff's return-to-work date as November 4, 2024, but Plaintiff was ultimately unable to return. *Id.* ¶ 14, 15. On November 5, 2024, Defendant UMA began counting Plaintiff's absences against her under its attendance policy. *Id.* ¶ 17. On or about November 11, 2024, Defendant UMA terminated Plaintiff. *Id.* ¶ 19.

Plaintiff claims that she "continues to be unable to return to work as certified by her treating physician." *Id.* ¶ 22.

On December 15, 2025, Plaintiff brought the present action. Dkt. 1. On March 23, 2026, filed the operative fourth Complaint,[2] which alleged the following claims against Defendant UMA: disability discrimination under the ADA (Count I); failure to accommodate under the ADA (Count II); retaliation under the ADA (Count III); interference under the FMLA (Count IV); and retaliation under the FMLA (Count

---

[2] Although Plaintiff titled the operative complaint as the "Second Amended Complaint," the Court notes that this is actually her fourth complaint. *See* Dkt. 1 (initial complaint); Dkt. 3 (first amended complaint); Dkt. 7 (second amended complaint); Dkt. 22 (third amended complaint).

2

V). Dkt. 22. Defendant now seeks the dismissal of the present, fourth Complaint with prejudice. *See* Dkt. 24.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

According to Plaintiff's own account, she was permitted to take all leave she was entitled to under both the FMLA and ADA, Dkt. 22 ¶¶ 10, 11, and was only terminated after revealing that she was unable to return to work. *Id.* ¶¶ 13, 19.

3

Plaintiff admits that she has remained unable to work from May 22, 2024, until at least the filing of the operative fourth Complaint on March 23, 2026. *See id* ¶¶ 10, 15, 22. The Court finds these admissions fatal for all claims, as described below.

## I.    Counts I–III: ADA Claims

Regarding the claim of disability discrimination under the ADA (Count I), Plaintiff alleges that Defendant UMA terminated Plaintiff "because of her disability and/or her need for continued medical leave related to her disability," *id.* ¶ 28, and that she was qualified to perform the essential functions of her position at the time of termination. *Id.* ¶ 27.

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To prevail on a discrimination claim under the ADA, the plaintiff must show that: (1) she is disabled, (2) she was a "qualified individual" when she was terminated, and (3) she was discriminated against on account of her disability. *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (citing *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003)). A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 760 (11th Cir. 2023) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)).

4

Here, Plaintiff simultaneously alleges that she was a qualified individual, Dkt. 22 ¶ 27, while admitting that she would have been unable to perform her job either when her approved FMLA and ADA leave expired or after the additional leave she requested. *See id.* ¶¶ 10, 15, 22. Because Plaintiff was unable to work—and continues to be unable to work—as certified by her treating physician, *see id.*, she could not be considered a qualified individual who could "perform the essential functions of the employment position[.]" 42 U.S.C. § 12111(8). Thus, Count I fails to state a viable claim.

Regarding the claim of failure to accommodate under the ADA (Count II), Plaintiff alleges that she requested a "reasonable accommodation" of additional leave, but that Defendant claimed undue hardship and unduly terminated Plaintiff's employment. Dkt. 22 ¶¶ 31–37.

"Discrimination under the ADA . . . includes the failure to make a reasonable accommodation to the known physical or mental limitations of the individual." *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 917 (11th Cir. 2019) (citing 42 U.S.C. § 12112(b)(5)(A)).[3] "An employer's failure to provide reasonable accommodation to a disabled individual is itself discrimination[.]" *Id.* (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007)). "The plaintiff bears the burden both to identify an accommodation and to show that it is

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. See *McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

reasonable." *Id.* (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 284–86 (11th Cir. 1997)). "An accommodation is 'reasonable' if it allows the employee to perform the essential functions of the job." *Banim v. Fla. Dep't of Bus. & Pro. Regul.*, 689 F. App'x 633, 634–35 (11th Cir. 2017) (citing *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1259–60 (11th Cir. 2001)).

Here, Plaintiff identifies her request for additional leave as the "reasonable accommodation." Dkt. 22 ¶ 27. However, although Plaintiff identified December 16, 2024, as the extent of this leave, *id.* ¶ 12, there was no certainty regarding whether further leave would be necessary. This is highlighted by the fact that Plaintiff has continued to be unable to work. *Id.* ¶¶ 10, 15, 22. Eleventh Circuit precedent is "clear that indefinite leave is not a reasonable accommodation[.]" *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 927 (11th Cir. 2019); *see Wood*, 323 F.3d at 1314 ("[The employee] was requesting an accommodation of indefinite leaves of absence so that he could work at some uncertain point in the future. [The employee]'s requested accommodation was not reasonable." (citing *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997))). Aside from the indefinite nature of the requested leave, this accommodation could not be reasonable because it would necessitate Plaintiff's continued absence from work and would not allow plaintiff to "perform the essential functions of the job." *Banim*, 689 F. App'x at 634–35. Thus, Count II fails to state a viable claim.

6

Regarding the claim of retaliation under the ADA (Count III), Plaintiff alleges that Defendant UMA terminated her employment because she requested additional leave. Dkt. 22 ¶¶ 38–44.

To sufficiently allege a claim of retaliation under the ADA, the plaintiff must first establish a *prima facie* case by demonstrating: "(1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018) (citations omitted). "Once the employee has established a *prima facie* case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action." *Id.* (citations omitted). "If the employer does so, the burden shifts back to the employee to demonstrate that the 'employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008)).

Assuming Plaintiff sufficiently alleged a *prima facie* case of retaliation, the Court looks to Defendant UMA's proffered nondiscriminatory reason for the termination. Here, Defendant UMA points to the admitted fact that at the time Plaintiff was terminated, "she had not worked for nearly six months and still had not been cleared to return to work." Dkt. 24 at 10 (citing Dkt. 22 ¶¶ 10–19). "Moreover, according to Plaintiff's own allegations, her unexcused absences after the return-to-

7

work date set by Defendant were the reason for her termination." *Id.* (citing Dkt. 22 ¶¶ 18–19). It has been held that an employee's inability to return to work is a legitimate, non-pretextual reason for termination. *See Patterson v. City of Melbourne*, 669 F. Supp. 3d 1204, 1226–27 (M.D. Fla. 2023) ("Defendant has identified a legitimate reason for Plaintiff's termination that is unrelated to any purported disability discrimination—i.e., he was no longer able to perform his assigned job functions and could not identify any reasonable accommodation that would allow him to do so[.]" (citing *Vega v. Invsco Grp., Ltd.*, 432 F. App'x 867, 871 (11th Cir. 2011))).

Plaintiff points to the following alleged facts in an attempt to establish that Defendant UMA's reasoning for terminating Plaintiff was pretextual: "(a) during the very period Defendant claimed undue hardship, the Learner Services Department was actively expanding and hiring new person[nel]; (b) immediately upon Plaintiff's termination, Defendant permanently promoted her subordinate into Plaintiff's own position—the same position it claimed it could not hold open; and (c) Defendant deliberately timed the termination to the day after Plaintiff's ADA leave expired to prevent her from qualifying for long-term disability benefits." Dkt. 27 at 7–8. However, the Court finds that each of these allegations fails to plausibly demonstrate that Defendant UMA's stated reason was pretextual. The fact that the Learner Services Department was hiring additional personnel does not undermine Defendant UMA's assertion that Plaintiff remained unable to return to work. Likewise, the

8

decision to promote Plaintiff's subordinate following her termination only highlights Defendant UMA's need to fill a position that had remained vacant during Plaintiff's extended absence. Finally, Plaintiff's conclusory allegation that Defendant UMA timed her termination to coincide with the expiration of her ADA leave fails to establish a reasonable inference of retaliatory intent. Even when construing the alleged facts in the light most favorable to Plaintiff, her allegations affirm that Defendant UMA terminated her employment after she admitted that she could not return to work within a reasonable period of time. Such allegations do not plausibly establish that Defendant UMA's proffered reason was a pretext for retaliation. Thus, Count III fails to state a viable claim.

## II.    Counts IV–V: FMLA Claims

Regarding the claim of interference under the FMLA (Count IV), Plaintiff alleges that Defendant UMA interfered with certain rights under the FMLA, including: "(a) counting Plaintiff's FMLA-protected absences as 'corrective action' points under its attendance policy . . . ; (b) terminating Plaintiff 4 to 5 days before she would have reached the termination threshold under Defendant's own written attendance policy . . . ; (c) contacting Mutual of Omaha to obtain the expiration date of Plaintiff's Short-Term Disability benefits and using that date to engineer Plaintiff's forced return-to-work date, with the deliberate intent of terminating Plaintiff's employment before she could qualify for Long-Term Disability benefits;

9

and (d) by these acts, directly interfering with Plaintiff's statutory right to take protected leave without adverse consequence." Dkt. 22 ¶ 47.

"Under the FMLA, a covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of her FMLA rights to coverage, leave entitlement, notice, benefits continuation, and job restoration." *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (citing 29 U.S.C. § 2615(a)(1); 29 U.S.C. §§ 2601–54; 29 C.F.R. §§ 825.100–803). "To establish an FMLA interference claim, an employee must show she was entitled to a benefit under the FMLA and her employer denied her that benefit." *Id.* (citation omitted); *see Batson*, 897 F.3d at 1331.

The FMLA allows employees to take leave for certain medical reasons under 29 U.S.C. §§ 2601 and 2612. An eligible employee may take up to 12 weeks of leave due to a serious health condition that renders her unable to perform the functions of her position. *Id.* § 2612(a)(1)(D). Upon return from FMLA leave, the statute also guarantees an eligible employee the right to be restored to her former position or an equivalent position, provided she can perform the essential functions of her job. *See id.* § 2614(a)(1). "But if, after twelve weeks, the employee cannot perform an essential function of her job, her employer may choose to end her employment." *Ramji*, 992 F.3d at 1241 (citing 29 C.F.R. § 825.216(c)).

Here, Plaintiff admits that she was permitted the full 12 weeks of FMLA leave from May 22, 2024, through August 14, 2024, Dkt. 22 ¶ 10, and that she was granted

the opportunity to be restored to her same position at the conclusion of that leave. *Id.* ¶ 14. Plaintiff was terminated only after she failed to return to work and informed Defendant UMA that she would be unable to return for an indeterminate amount of time. *See id.* ¶ 19. Accordingly, Plaintiff has not plausibly alleged that Defendant UMA interfered with, restrained, or denied any entitlement guaranteed by the FMLA. Nor do Plaintiff's allegations regarding Defendant UMA's attendance policy, its communications with her disability insurer, or the timing of her termination establish that Defendant UMA denied her any benefit to which she was entitled under the statute. Thus, Count IV fails to state a viable claim.

Regarding the claim of retaliation under the FMLA (Count V), Plaintiff alleges that she "engaged in protected activity under the FMLA by taking approved medical leave and by continuing to seek medically-necessary extensions of that leave[,]" and that Defendant retaliated against Plaintiff by terminating her employment. Dkt. 22 ¶¶ 50–57.

To sufficiently allege a claim of retaliation under the FMLA, the plaintiff must first establish a *prima facie* case by demonstrating: "(1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) (citation omitted). "[O]nce [the employee] shows a *prima facie* retaliation claim, the burden then shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for her [termination]."

11

*Id.* If the employer does so, "the burden then shifts back to [the employee] to show that [the employer]'s supposedly independent reasons were, in reality, merely a pretext[.]" *Id.* at 1244.

Similar to the retaliation claim under the ADA (Count III), assuming Plaintiff sufficiently alleged a *prima facie* case of retaliation, the Court looks to Defendant UMA's proffered nondiscriminatory reason for the termination. Here, Defendant UMA provides the reason that Plaintiff "was unable to work at the conclusion of her 12 weeks of FMLA leave." Dkt. 24 (citing Dkt. 22 ¶ 11). Plaintiff fails to assert in her complaint or argue in her response that this reason is pretextual. *See* Dkt. 22 ¶¶ 50–57; Dkt. 27 at 10–11. Thus, Count V fails to state a viable claim.

Overall, the Court finds that Plaintiff has failed to sufficiently plead any claim and that Plaintiff's operative fourth Complaint is not amenable to cure. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (finding that dismissal with prejudice is appropriate where the district court determines that leave to amend would be futile because the amended complaint would still fail to survive a motion to dismiss). A fifth complaint is not permitted.

<strong>CONCLUSION</strong>

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant UMA EDUCATION, INC.'s Motion to Dismiss, Dkt. 24, is **GRANTED**.

12

2. Plaintiff Iesha N. Spradley's operative fourth Complaint, Dkt. 22, is **DISMISSED with prejudice**.

3. The Clerk is **DIRECTED** to terminate all pending motions and deadlines and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on June 26, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
*Pro se* party
Counsel of Record

13